IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Edward W. Nottingham**

Civil Action No. 04–cv–02323–EWN–PAC

SUPREME AUTO TRANSPORT, an Oklahoma corporation,

      Plaintiff,

v.

ATHENA ASSURANCE COMPANY, a Minnesota corporation,

      Defendant.

---

## ORDER AND MEMORANDUM OF DECISION

---

      This is a breach of contract case. Plaintiff Supreme Auto Transport, Inc. argues that Defendant Athena Assurance Company breached an insurance contract between the parties by refusing to defend and indemnify Plaintiff in a lawsuit. The basis for the refusal is a named driver exclusion endorsement, which Plaintiff contends is void and unenforceable. This matter is before the court on Plaintiff's "Motion for Partial Summary Judgment," filed July 7, 2005 and "Defendant's Motion for Summary Judgment," filed July 11, 2005. Jurisdiction is premised upon diversity of citizenship pursuant to 28 U.S.C. § 1331 (2006).

## FACTS

### 1. *Factual Background*

Plaintiff is in the business of transporting automobiles to automobile dealerships. (Mot. for Partial Summ. J., Mem. Br. in Supp. of Partial Summ. J., Statement of Undisputed Material Facts ¶ 1 [filed July 7, 2005] [hereinafter "Pl.'s Br."]; *admitted in relevant part at* Def.'s Resp. to Pl.'s Mot. for Partial Summ. J., Resp. to Statement of Undisputed Material Facts ¶ 1 [filed July 27, 2005] [hereinafter "Def.'s Resp."].) Plaintiff began operations in the fall of 2000 and purchased its first commercial automobile liability insurance policy from Defendant. (*Id.*, Statement of Undisputed Material Facts ¶ 2; *admitted at* Def.'s Resp., Resp. to Statement of Undisputed Material Facts ¶ 2.) Plaintiff's first policy, policy number AT05502777 (the "Policy"), reflected Plaintiff as the named insured and provided coverage for a one-year term from November 17, 2000 through November 17, 2001. (*Id.*, Statement of Undisputed Material Facts ¶ 3; *admitted at* Def.'s Resp., Resp. to Statement of Undisputed Material Facts ¶ 3.)

Plaintiff purchased the Policy through Wells Fargo Insurance Agency ("Wells Fargo"). (*Id.*, Statement of Undisputed Material Facts ¶ 4; *admitted at* Def.'s Resp., Resp. to Statement of Undisputed Material Facts ¶ 4.) Rand Austin and Teresa Hughes were, respectively, the producing agent and customer representative agent at Wells Fargo who worked on the Policy. (*Id.*) Wells Fargo, as Defendant's producing agency, obtained the Policy through Swett & Crawford, Defendant's managing general underwriter. (*Id.*, Statement of Undisputed Material Facts ¶ 5; *admitted at* Def.'s Resp., Resp. to Statement of Undisputed Material Facts ¶ 5.) Pam Woolley at Swett & Crawford was the underwriter of the Policy. (*Id.*)

Plaintiff hired Willie Dodson as a driver on or about September 28, 2001.  (Def.'s Resp., Ex. G at 24 [Woolley Dep.].)  Plaintiff's president, Doug Fellows, leased a tractor and trailer to Dodson.  (Pl.'s Br., Statement of Undisputed Material Facts ¶ 15; *admitted in relevant part at* Def.'s Resp., Resp. to Statement of Undisputed Material Facts ¶ 15.)  On October 1, 2001, Hughes obtained and reviewed a motor vehicle record ("MVR") pertaining to Dodson, which reflected that Dodson had been convicted twice — for reckless driving in 2001 and "expired or no document" in 1999.  (*Id.*, Statement of Undisputed Material Facts ¶ 12, Ex. 13 [Dodson MVR]; *admitted at* Def.'s Resp., Resp. to Statement of Undisputed Material Facts ¶ 12.)

Wells Fargo maintained a list of Plaintiff's drivers.  (*Id.*, Statement of Undisputed Material Facts ¶ 18; *admitted at* Def.'s Resp., Resp. to Statement of Undisputed Material Facts ¶ 18.)  As of at least October 16, 2001, Dodson was on Wells Fargo's list of Plaintiff's drivers.  (*Id.*)  On October 16, 2001, in preparation for submitting an application for renewal of the Policy to Swett & Crawford, Wells Fargo ordered MVRs on several of Plaintiff's drivers.  (*Id.*, Statement of Undisputed Material Facts ¶ 20; *admitted at* Def.'s Resp., Resp. to Statement of Undisputed Material Facts ¶ 20.)  The October 16, 2001 MVR on Dodson reflected the same two convictions as the October 1, 2001 MVR.  (*Id.*, Statement of Undisputed Material Facts ¶ 21; *admitted at* Def.'s Resp., Resp. to Statement of Undisputed Material Facts ¶ 21.)  On October 24, 2001, Plaintiff sent Hughes a list of its current drivers and a description of the years of driving experience for each driver.  (*Id.*, Statement of Undisputed Material Facts ¶ 23; *admitted at* Def.'s Resp., Resp. to Statement of Undisputed Material Facts ¶ 23.)  The list reflected that Dodson was an active driver for Plaintiff with twenty-eight years of experience.  (*Id.*)  On October 25, 2001,

Hughes faxed a renewal application to Swett & Crawford, which included Wells Fargo's list of Plaintiff's drivers.  (*Id.*, Statement of Undisputed Material Facts ¶ 25; *admitted at* Def.'s Resp., Resp. to Statement of Undisputed Material Facts ¶ 25.)

On or about November 13, 2001, Swett & Crawford sent to Wells Fargo a conditional quote for renewal of the Policy, subject to various requirements including MVRs for all of Plaintiff's then-current drivers.  (Def.'s Mot. for Summ. J., Br. in Supp. of Def.'s Mot. for Summ. J., Statement of Undisputed Material Facts ¶ 6 [filed July 11, 2005] [hereinafter "Def.'s Br."]; *admitted at* Pl.'s Resp. to Def.'s Mot. for Summ. J., Resp. to Statement of Undisputed Material Facts ¶ 6 [filed July 25, 2005] [hereinafter "Pl.'s Resp."].)  Defendant issued a renewal of the Policy, policy AT05504186 (the "Renewal Policy") effective November 17, 2001.  (Pl.'s Br., Statement of Undisputed Material Facts ¶ 27; *admitted at* Def.'s Resp., Resp. to Statement of Undisputed Material Facts ¶ 27.)

On December 21, 2001, Woolley spoke with Austin and required copies of MVRs for all of Plaintiff's drivers.  (*Id.*, Statement of Undisputed Material Facts ¶ 34; *admitted at* Def.'s Resp., Resp. to Statement of Undisputed Material Facts ¶ 34.)  Austin sent the requested MVRs to Woolley on the same day.  (*Id.*)  Woolley testified that she did not receive the MVRs until on or about December 27, 2001.  (Def.'s Br., Statement of Undisputed Material Facts ¶ 26; *admitted in relevant part at* Pl.'s Resp., Resp. to Statement of Undisputed Material Facts ¶ 26.)  Plaintiff maintains that it may have sent MVRs on new drivers, including Dodson, to Swett & Crawford with the renewal application in October 2001.  (Pl.'s Resp., Resp. to Statement of Undisputed Material Facts ¶ 26.)

On January 7, 2002, Woolley sent a fax to Austin stating in relevant part that she had reviewed the MVRs and had concerns about Dodson, who had the "maximum points [Defendant] will allow." (*Id.*, Statement of Undisputed Material Facts ¶ 35; *admitted at* Def.'s Resp., Resp. to Statement of Undisputed Material Facts ¶ 35.) Woolley stated that she "need[ed] to know why [Plaintiff] feels [Dodson] is a good driver and went against their [sic] hiring standards;" and asked Austin to "discuss with [Plaintiff] and let [Woolley] know." (*Id.*) Hughes entered handwritten responses to Woolley's questions on a copy of Woolley's fax, and faxed the document back to Woolley. (*Id.*, Statement of Undisputed Material Facts ¶ 36; *admitted at* Def.'s Resp., Resp. to Statement of Undisputed Material Facts ¶ 36.) With respect to Dodson, Hughes wrote "[w]ill [sic] be speaking to driver to let him go." (*Id.*) Upon receipt of Hughes's faxed responses, Woolley noted on the same document "[w]e will need to exclude" regarding Dodson. (*Id.*, Statement of Undisputed Material Facts ¶ 38; *admitted at* Def.'s Resp., Resp. to Statement of Undisputed Material Facts ¶ 38.)

A named driver exclusion endorsement ("NDEE") is an instrument that excludes certain named individuals from coverage under a policy. (*Id.*, Statement of Undisputed Material Facts ¶ 40; *admitted at* Def.'s Resp., Resp. to Statement of Undisputed Material Facts ¶ 40.) Under an NDEE, an insurer will have no responsibility for accidents occurring when a driver named on the instrument is driving an insured vehicle. (*Id.*) On March 8, 2002, Swett & Crawford processed and forwarded to Wells Fargo an NDEE naming Dodson and three other of Plaintiff's drivers ("the NDEE"). (*Id.*, Statement of Undisputed Material Facts ¶ 39; *admitted at* Def.'s Resp., Resp. to Statement of Undisputed Material Facts ¶ 39.) The NDEE set forth an effective date of

November 17, 2001, the starting date of the Renewal Policy.  (*Id.*, Statement of Undisputed

Material Facts ¶ 57; *admitted at* Def.'s Resp., Resp. to Statement of Undisputed Material Facts ¶

57.)

On April 4, 2002, Hughes sent the NDEE to Michael Montoya, Plaintiff's controller, and

requested that Montoya sign and return the document.  (*Id.*, Statement of Undisputed Material

Facts ¶ 40; *admitted at* Def.'s Resp., Resp. to Statement of Undisputed Material Facts ¶ 40.)

Montoya maintained Plaintiff's insurance files in his office and compiled monthly reports of

Plaintiff's gross receipts, which were the basis for calculating the premium on the insurance

coverage provided by Defendant.  (*Id.*, Statement of Undisputed Material Facts ¶ 14; *admitted at*

Def.'s Resp., Resp. to Statement of Undisputed Material Facts ¶ 14.)  On April 12, 2002,

Montoya signed the NDEE and returned the document to Hughes.  (*Id.*, Statement of Undisputed

Material Facts ¶ 41; *admitted at* Def.'s Resp., Resp. to Statement of Undisputed Material Facts ¶

41.)  Prior to April 12, 2002, Montoya had never signed an exclusionary endorsement or

application for insurance coverage on Plaintiff's behalf.  (*Id.*, Statement of Undisputed Material

Facts ¶ 60; *admitted at* Def.'s Resp., Resp. to Statement of Undisputed Material Facts ¶ 60.)

Montoya, as Plaintiff's contact person, had previously received applications in his name, but

James Walls, Plaintiff's CEO, had always signed the applications.  (*Id.*)  From 2001 through 2002,

Montoya received, signed, and mailed various insurance documents and other correspondence to

Hughes and Austin.  (Def.'s Resp., Statement of Additional Disputed Material Facts ¶ 9; *admitted

at* Pl.'s Reply in Supp. of Mot. for Partial Summ. J., Resp. Concerning Disputed Facts ¶ 9 [filed

Aug. 4, 2005] [hereinafter "Pl.'s Reply"].)  Among the correspondence were additions and

various endorsements to the Policy, additions and deletions of named drivers, and a letter from Hughes to Montoya regarding Dodson's poor driving record. (*Id.*)

On April 16, 2002, Hughes sent Plaintiff a copy of its list of drivers for updating. (Pl.'s Br., Statement of Undisputed Material Facts ¶ 48; *admitted in relevant part at* Def.'s Resp., Resp. to Statement of Undisputed Material Facts ¶ 48.) Plaintiff's safety manager, Stacie Gaines, or someone working at Gaines's direction, updated the list Hughes had sent by deleting drivers who were no longer working for Plaintiff and adding new drivers. (*Id.*, Statement of Undisputed Material Facts ¶ 49; *admitted at* Def.'s Resp., Resp. to Statement of Undisputed Material Facts ¶ 49.) The updated list reflected Dodson as an active driver. (*Id.*)

On July 9, 2002, Dodson was involved in an accident resulting in a fatality. (*Id.*, Statement of Undisputed Material Facts ¶ 50; *admitted at* Def.'s Resp., Resp. to Statement of Undisputed Material Facts ¶ 50.) After the accident, the victim's survivors filed a lawsuit against Plaintiff in United States District Court for the District of Wyoming. (Def.'s Br., Statement of Undisputed Material Facts ¶ 15; *admitted at* Pl.'s Resp., Resp. to Statement of Undisputed Material Facts ¶ 15.) The lawsuit is styled *Estate of Glen Frank v. Supreme Auto Transport, Inc.*, case number 03CV87D (the "Frank Lawsuit"). (Pl.'s Br., Statement of Undisputed Material Facts ¶ 50; *admitted at* Def.'s Resp., Resp. to Statement of Undisputed Material Facts ¶ 50.) Citing the NDEE endorsement relating to Dodson, Defendant denied Plaintiff coverage in connection with the lawsuit. (*Id.*, Statement of Undisputed Material Facts ¶ 51; *admitted at* Def.'s Resp., Resp. to Statement of Undisputed Material Facts ¶ 51.)

### 2.   *Procedural History*

On October 20, 2004, Plaintiff filed a complaint in Denver County District Court for the

State of Colorado.  (Compl. [filed Oct. 20, 2004].)  On November 9, 2004, Defendant removed

Plaintiff's action to this court.  (Notice of Removal [filed Nov. 9, 2004].)  On November 18,

2004, Plaintiff filed an amended complaint asserting claims for: (1) a declaratory judgment that

the NDEE is invalid and unenforceable and Defendant must indemnify and defend Plaintiff in the

Frank lawsuit; and (2) breach of contract.  (Am. Compl. [filed Nov. 18, 2004] [hereinafter "Am.

Compl."])  On December 2, 2004, Defendant filed an answer.  (Answer to Pl.'s First Am. Compl.

[filed Dec. 2, 2004].)  On July 7, 2005, Plaintiff filed a motion for partial summary judgment.

(Pl.'s Br.)  Plaintiff argues it is entitled to summary judgment because: (1) Defendant's NDEE

does not meet statutory notice requirements on its face; (2) no consideration supported the

NDEE; and (3) Plaintiff did not receive proper notice of the NDEE.  (*Id.*)  On July 27 2005,

Defendant filed a response to Plaintiff's motion.  (Def.'s Resp.)  On August 4, 2005, Plaintiff filed

a reply brief in support of its motion.  (Pl.'s Reply.)  This matter is fully briefed.

On July 11, 2005, Defendant filed a motion for summary judgment.  (Def.'s Br.)

Defendant argues it is entitled to summary judgment because: (1) Colorado law expressly

provides for NDEEs; (2) Defendant's NDEE did not represent a reduction in coverage, therefore

Defendant was not required to meet statutory notice requirements and the NDEE did not require

consideration; and (3) to the extent the NDEE was a reduction in coverage, it was supported by

consideration and Defendant gave Plaintiff sufficient notice.  (*Id.*)  On July 25, 2005, Plaintiff filed

a response to Defendant's motion.  (Pl.'s Resp.)  On August 10, 2005, Defendant filed a reply

brief in support of its motion.  (Def.'s Reply Br. in Supp. of its Mot. for Summ. J. [filed Aug. 10, 2005].)  This matter is fully briefed.

## ANALYSIS

### *1.      Standard of Review*

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, the court may grant summary judgment where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c) (2006); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986); *Concrete Works, Inc. v. City & County of Denver*, 36 F.3d 1513, 1517 (10th Cir. 1994).  The moving party bears the initial burden of showing an absence of evidence to support the nonmoving party's case.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter."  *Concrete Works*, 36 F.3d at 1518 (citing *Celotex*, 477 U.S. at 325).  The nonmoving party may not rest solely on the allegations in the pleadings, but must instead designate "specific facts showing that there is a genuine issue for trial."  *Celotex*, 477 U.S. at 324; *see* Fed. R. Civ. P. 56(e) (2006).  A fact in dispute is "material" if it might affect the outcome of the suit under the governing law; the dispute is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party.  *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997) (citing *Anderson*, 477 U.S. at 248).  The court may consider only admissible evidence when ruling on a summary judgment motion.  *See World of Sleep, Inc. v. La-Z-Boy Chair Co.*, 756 F.2d

1467, 1474 (10th Cir. 1985).  The factual record and reasonable inferences therefrom are viewed

in the light most favorable to the party opposing summary judgment.  *Byers v. City of*

*Albuquerque*, 150 F.3d 1271, 1274 (10th Cir. 1998) (citing *Concrete Works*, 36 F.3d at 1517).

**2.      *Evaluation of Claims***

**a.      *Plaintiff's Claim for Declaratory Judgment***

Plaintiff seeks a declaratory judgment that the NDEE is invalid and unenforceable and

Defendant must defend and indemnify Plaintiff in the Frank Lawsuit.  (Am. Comp. ¶¶ 16–24.)

Plaintiff argues that it is entitled to summary judgment on its claim because: (1) on its face, the

NDEE does not meet statutory notice requirements; (2) no consideration supports the NDEE; and

(3) Plaintiff did not receive proper notice of the NDEE.  (Pl.'s Br. at 14–28.)  Defendant argues

that it is entitled to summary judgment on Plaintiff's claim because: (1) Colorado law expressly

provides for NDEEs; (2) Defendant's NDEE did not represent a reduction in coverage, thereby

obviating consideration and notice requirements; and (3) if the NDEE was a reduction in

coverage, it was justified by Defendant's newly discovered increase in risk and proper because

Defendant gave Plaintiff sufficient notice.  (Def.'s Br. at 8–24.)  I address the focal points of the

parties' arguments in turn.

**i.      *Statutory Notice Requirements Relating to the NDEE***

On its face, the NDEE did not give advance notice of an impending exclusion, but rather

contemplated immediate retroactive application to the date of renewal of the Policy, November

17, 2001.  (Def.'s Reply, Ex. D [NDEE].)  Plaintiff argues that the NDEE controverts the

advance notice requirements outlined in several sections of the Colorado Revised Statutes.  (Pl.'s

Br. at 14–23.)  Defendant argues that the statutory notice requirements do not apply to the

NDEE, or to the extent they do, Defendant has satisfied the requirements.  (Def.'s Resp. at

16–33; Def.'s Br. at 8–19.)

### (1)      Colorado Revised Statutes Section 10–4–721[1]

Plaintiff argues that in issuing the NDEE, section 10–4–721 applied and subjected

Defendant to: (1) a forty-five day notice requirement; (2) a requirement to send notice of intent to

cancel; and (3) a requirement to offer Plaintiff continued coverage subject to the exclusion.  (Am.

Compl. ¶ 21.)  Section 10–4–721 governs exclusion of a named driver, and provides, in relevant

part:

> [i]n any case where an insurer is authorized under this part [seven] to cancel or
> refuse to renew or increase the premiums on an automobile liability insurance
> policy under which more than one person is insured because of the claim
> experience or driving record of one or more but less than all of the persons insured
> under the policy, the insurer shall in lieu of cancellation, nonrenewal, or premium
> increase offer to continue or renew the insurance but to exclude from coverage, by
> name, the person whose claim experience or driving record would have justified
> the cancellation or nonrenewal.

Colo. Rev. Stat. § 10–4–721 (2002).  The parties do not dispute that Colorado courts have

interpreted section 10–4–721 to allow for NDEEs.  *See Sersion v. Dairyland Ins. Co.*, 757 P.2d

---

[1]Colorado Revised Statutes section 10–4–721, which arose under the Colorado Auto
Accident Reparations Act ("CAARA"), has been renumbered as section 10–4–630.  CAARA,
which was repealed in 2003, comprised Colorado Revised Statutes sections 10–4–701 through
10–4–726 required motor vehicle owners to purchase and maintain certain minimum levels of
insurance and allowed insurers to exclude from coverage certain high-risk individuals.  *See* Colo.
Rev. Stat. §§ 10–4–701–10–4–726, *repealed by* Laws 1997, H.B. 97–1209 § 8, efffective July 1,
2003.  Because the events in the instant case took place while CAARA was still effective, I cite to
the former numeration and the 2002 version of Colorado Revised Statutes.

1169, 1170 (Colo. Ct. App. 1988) (holding statutory language unambiguously demonstrated legislative intent to authorize an insurer to exclude individuals from coverage and NDEE was not void on public policy grounds).

Plaintiff argues that Defendant's NDEE invokes the statutory notice requirements of section 10–4–721.  (Pl.'s Br. at 14.)  Defendant argues that it is not subject to the statutory notice requirements of section 10–4–721(1) because the statute applies only: (1) in the situation of a cancellation, refusal to renew, or increase in premiums on a policy; and (2) to automobile liability policies, whereas Defendant provided Plaintiff with a commercial liability policy on trucks and tractors.  (Def.'s Resp. at 16–18; Def.'s Br. at 8–10.)  Defendant's argument is sound.  Section 10–4–721 contemplates an alternative action "in lieu of cancellation, nonrenewal, or premium increase."  Colo. Rev. Stat. § 10–4–721 (2002).  Here, Defendant's NDEE did not purport to increase the premium on the Renewal Policy.  To the contrary, on its face, the NDEE states that "[a]ll other terms of [Plaintiff's] [Renewal] [P]olicy remain the same" (Def.'s Reply, Ex. D [NDEE].)  Moreover, as will be discussed in more detail below, Defendant was not cancelling or refusing to renew the Policy or Renewal Policy.  Accordingly, Plaintiff's reliance upon section 10–4–721 is misplaced and Defendant was not subject to the notice requirements thereunder.

### (2)   *Colorado Revised Statutes Section 10–4–109.7*

Plaintiff argues that in issuing the NDEE, Defendant was subject to a forty-five day notice requirement under section 10–4–109.7.  (Am. Compl. ¶ 19.)  Section 10–4–109.7 governs notice of intent prior to cancellation of insurance policies, and provides, in relevant part:

> [n]o insurer shall cancel a policy of insurance that provides coverages on commercial exposures such as . . . automobile liability . . . unless such insurer mails by first-class mail to the named insured, at the last address shown in the insurer's records, at least forty-five days in advance a notice of the company's intention to cancel.

Colo. Rev. Stat. § 10–4–109.7 (2002).  Plaintiff argues that Defendant's NDEE invokes the notice requirements for cancellation of coverage.  (Pl.'s Br. at 15.)  Defendant argues that the instant case does not involve cancellation of a policy, but exclusion of a driver.  (Def.'s Resp. at 19; Def.'s Br. at 10.)  I agree with Defendant's assessment.  In Colorado, "cancellation" of an insurance policy refers to the termination of the entire policy.  *Rotenberg v. Am. Standard Ins. Co.*, 865 P.2d 905, 906–07 (Colo. Ct. App. 1993).  Defendant did not cancel the Renewal Policy through the NDEE.  On August 15, 2002, Defendant notified Plaintiff of its intent not to renew the Renewal Policy for the term from November 2002 through November 2003.  (Def.'s Br., Ex. M [Notice of Cancellation, Nonrenewal or Change in Policy Premium/Coverage].)  Had Defendant cancelled the Renewal Policy with the NDEE, no such non-renewal notice would be necessary.  To the extent Plaintiff argues Defendant purported to cancel the Policy with the NDEE, Plaintiff's argument is nonsensical.  It is undisputed that the Policy terminated by its own terms on November 17, 2001, long before the April 2002 NDEE.  (*Id.*, Statement of Undisputed Material Facts ¶ 3; *admitted at* Def.'s Resp., Resp. to Statement of Undisputed Material Facts ¶ 3.)  Moreover, it is undisputed that Defendant renewed the Policy in the form of the Renewal Policy.  (*Id.*, Statement of Undisputed Material Facts ¶ 27; *admitted at* Def.'s Resp., Resp. to Statement of Undisputed Material Facts ¶ 27.)  Accordingly, the NDEE was not a cancellation of coverage and Defendant was not bound by the notice requirements under section 10–4–109.7.

### (3)     *Colorado Revised Statutes Section 10–4–110*

Plaintiff argues that in issuing the NDEE, Defendant was subject to a forty-five day notice requirement under section 10–4–110.  (Am. Compl. ¶ 19.)  Section 10–4–110 governs notice of intent prior to non-renewal of insurance policies, and provides, in relevant part:

> [n]o insurer shall refuse to renew a policy of insurance that provides coverages on commercial exposures such as general comprehensive liability . . .  unless such insurer mails by first-class mail to the named insured, at the last address shown in the insurer's records, at least forty-five days in advance a notice of the company's intention not to renew.

Colo. Rev. Stat § 10–4–110 (2002).  Plaintiff argues that Defendant's NDEE invokes the notice requirements for a non-renewal of an insurance policy.  (Pl.'s Br. at 15.)  Defendant argues that the instant case does not involve non-renewal of a policy, but exclusion of a driver.  (Def.'s Resp. at 19–20; Def.'s Br. at 11–12.)  Defendant's assessment trumps.  The parties do not dispute that Defendant renewed the Policy in the form of the Renewal Policy.  (Pl.'s Br., Statement of Undisputed Material Facts ¶ 27; *admitted at* Def.'s Resp., Resp. to Statement of Undisputed Material Facts ¶ 27.)  The NDEE was not a non-renewal of coverage.  Accordingly, Plaintiff's reliance upon section 10–4–110 is misplaced and Defendant was not subject to notice requirements thereunder.

### (4)     *Colorado Division of Insurance Regulation 5–2–2*

Plaintiff argues that in issuing the NDEE, Defendant was subject to a requirement under Colorado Division of Insurance Regulation 5–2–2 to present conspicuous notice on the declarations page of the Renewal Policy advising Plaintiff that a particular driver — here, Dodson — was being excluded from coverage.  (Am. Compl. ¶ 20.)  Regulation 5–2–2 requires

-14-

notification of an existing exclusion upon renewal of an insurance policy and provides, in relevant

part:

> [e]ach insurer renewing a complying policy of automobile insurance . . . which policy excludes a named driver under the provisions of [Colorado Revised Statutes section 10–4–721], shall by conspicuous printed notice re-notify the named insured at the time of each policy renewal. Failure to so re-notify the named insured of an excluded driver at the time of policy renewal shall make such exclusion void for all policy coverages.

Colorado Division of Insurance Amended Regulation 5–2–2 (2006), *available at*

http://www.dora.state.co.us/insurance/regs/5-2-2.pdf.[2]  Plaintiff admits that "[t]echnically the

above cited regulation requiring re-notification upon renewal is not applicable because [] Dodson

was not excluded from coverage under [the Policy]."  (Pl.'s Br. at 25.)  Not surprisingly,

Defendant agrees.  (Def.'s Br. at 10.)  It is thus undisputed that Regulation 5–2–2 does not apply,

and Defendant was not subject to the notice requirements thereunder.

### (5)    *Colorado Revised Statutes Section 10–4–110.5*

Plaintiff argues that in issuing the NDEE, Defendant was subject to a forty-five day notice

requirement under section 10–4–110.5.  (Am. Compl. ¶ 19.)  Section 10–40–110.5 governs

notice of intent prior to a unilateral decrease in coverage previously provided by insurance

policies and provides, in relevant part:

> (1) [n]o insurer shall . . . decrease the coverage benefits on renewal of a policy of insurance that provides coverages on commercial exposures such as . . . automobile liability . . . unless the insurer mails by first-class mail to the named insured, at the last address shown in the insurer's records, at least forty-five days in

---

[2]Although both parties quote this Regulation in their respective submissions, neither provides a citation to this Regulation.  (Pl.'s Br. at 25; Def.'s Br. at 11.)

advance a notice, accompanied by the reasons therefor, stating the renewal terms and the amount of premium due.  If the insurer fails to furnish the renewal terms and the statement of the amount of premium due at least forty-five days prior to the expiration date of the policy, the insurer shall automatically extend the existing policy for a period of forty-five days and the premium for this extended period shall be prorated based on the premium applicable to the existing policy.  If the insurer fails to meet the requirements of this section prior to the expiration date of the existing policy, the insurer shall be deemed to have renewed the insured's policy for an identical policy period at the same terms, conditions, and premium as the existing policy.

(2) A notice of a decrease in coverage benefits during the term of a policy of insurance identified in subsection (1) of this section shall be valid only if it sets forth the reason for the decrease and is based on one or more of the following reasons:

(a) [n]onpayment of premium;

(b) [a] false statement knowingly made by the insured on the application for insurance;

(c) substantial change in the exposure or risk other than that indicated in the application and underwritten as of the effective date of the policy unless the insured has notified the insurer of the change and the insurer accepts such change.

Colo. Rev. Stat. § 10–4–110.5 (2002).  Plaintiff argues that Defendant's NDEE invokes the notice requirements for an unilateral decrease in coverage benefits.  (Pl.'s Br. at 15.)  Defendant argues that section 10–4–110.5 does not apply because the NDEE did not decrease Plaintiff's "coverage benefits."  (Def.'s Resp. at 23.)  Defendant argues that a decrease in "coverage benefits" signifies only an actual reduction or decrease in the coverage limits or amount of insurance.  (*Id.*)  In support of its argument, Defendant relies on *Coffman v. State Farm Mut. Auto. Ins. Co.*, 884 P.2d 275 (Colo. 1994), a Colorado Supreme Court case that neither uses the term "coverage benefits" nor refers to section 10–4–110.5.  (*Id.*)  Defendant's argument is

unavailing.  In 2001, the Colorado Supreme Court expressly referred to the term "coverage

benefits" in the context of section 10–4–110.5 to signify insurance "coverage."  *City of Arvada v.*

*Colorado Intergovernmental Risk Sharing Agency*, 19 P.3d 10, 12–13, n.3 (Colo. 2001).  Here,

Defendant's NDEE expressly states "[Plainitff's] [c]overage [i]s [c]hanged" and purports to

remove from Plaintiff's insurance coverage certain drivers.  (Def.'s Reply, Ex. D [NDEE].)  It is

thus markedly difficult to see how exclusion of a driver is not a reduction in coverage benefits.

Consequently, I find that section 10–4–110.5 applies to the issuance of the NDEE and in issuing

the NDEE, Defendant was subject to requirements set forth therein — including the forty-five day

advance notice requirement.

Defendant argues that to the extent section 10–4–110.5 applies in the instant case,

Defendant has satisfied the notice requirement because the penalty for non-compliance is

continuing coverage for forty-five days.  (Def.'s Resp. at 22.)  Defendant argues further that the

NDEE was prospective with respect to the Frank Lawsuit because Dodson's accident took place

more than forty-five days after: (1) Plaintiff received a renewal quote in November 2001; and (2)

Montoya signed the NDEE.  (*Id.*)  Defendant's argument is unavailing, as it wholly ignores the

final sentence of the statute section.  The last sentence of the section provides that "[i]f the insurer

fails to meet the requirements of this section prior to the expiration date of the existing policy, the

insurer shall be deemed to have renewed the insured's policy for an identical policy period at the

same terms, conditions, and premium as the existing policy."  Colo. Rev. Stat. § 10–4–110.5.

"When interpreting the meaning behind a statute, well-established principles of law dictate that

courts must first look to the plain language of the statute to discern the intent of the General

Assembly." *City of Arvada*, 19 P.3d at 13.  Given the provision for renewal, the statute's plain language does not contemplate the forty-five day automatic correction Defendant envisions. Rather, the statute clearly requires that an insurer come into actual statutory compliance before reducing an insured's coverage.  Defendant was subject to, and did not satisfy, the forty-five day advance notice requirement under section 10–4–110.5.

### b.      *Consideration for the NDEE — Material Change in Risk*

Plaintiff argues that the NDEE is defective because it is, in essence, a contract modification that is not supported by consideration.  (Pl.'s Br. at 18–23.)  In keeping with general contract principles, consideration must support a modification of an insurance contract that affects coverage terms of a policy.  *See Hoagland v. Celebrity Homes, Inc.*, 572 P.2d 493, 494 (Colo. Ct. App. 1977) ("generally, a modification to a contract requires consideration"); 2 Couch on Insurance 3d § 25:24 (2005).  Plaintiff argues that, under the terms of Defendant's policy and by statute, a material change in an insurer's exposure to risk would authorize the insurer to cancel coverage.  (Pl.'s Br. at 19.)  Plaintiff argues further that such a right to cancel coverage would create consideration for a modification or NDEE in the form of the insurer's agreement not to cancel an insured's existing policy.  (*Id.*)  Plaintiff argues that there was no change in Defendant's risk, and thus no consideration to support the NDEE.  (*Id.* at 18–23.)  Defendant argues that Dodson's MVR represented a substantial change in Defendant's exposure to risk, which serves as consideration for the NDEE.  (Def.'s Resp. at 24, 27–34; Def.'s Br. at 12–17, 18.)

Both parties draw on language from Colorado Revised Statutes section 10–4–110.5 and from a Colorado Required Endorsement contained in Defendant's policies in support of their

contentions that an insurer may cancel or decrease coverage if a material change occurs in the risk against which it insures.  Specifically, section 10–4–110.5 allows an insurer to decrease coverage in the event of "[a] substantial change in the exposure or risk other than that indicated in the application and underwritten as of the effective date of the policy unless the insured has notified the insurer of the change and the insurer accepts such change."  Colo. Rev. Stat. § 10–4–110.5(2)(c) (2002).  Similarly, the Colorado Required Endorsement language contained in Defendant's policies provides that Defendant may cancel or decrease coverage during the term of the policy if a substantial change in the risk occurs, "[b]ut this doesn't apply to a change that you told us about on your application, and that we knew about when your policy began . . . ."  (Pl.'s Br., Ex. 16 [Renewal Policy Excerpt].)

Plaintiff argues that Dodson's MVR did not represent a material change in Defendant's risk because Defendant knew of the MVR before it issued the Renewal Policy.  (Pl.'s Br. at 18–24.)  Specifically, Plaintiff contends that Defendant had constructive knowledge of Dodson's MVR because its agent, Wells Fargo, had actual knowledge thereof in October 2001.  (Pl.'s Br. at 23–24.)  Defendant argues that it had no knowledge of Dodson's MVR until its underwriter received and reviewed Dodson's MVR on December 27, 2001, after it had issued the Renewal Policy.  (Def.'s Resp. at 35–37.)

The parties do not dispute that Wells Fargo: (1) had in its possession a driver list reflecting Dodson as one of Plaintiff's drivers as of October 16, 2001; (2) obtained and reviewed Dodson's MVR on October 1, 2001; and (3) obtained a second copy of Dodson's MVR on October 16, 2001 in connection with preparing a renewal application for the Policy.  (Pl.'s Br., Statement of

-19-

Undisputed Material Facts ¶¶ 12, 18, 20, 21, 53; *admitted at* Def.'s Resp., Resp. to Statement of

Undisputed Material Facts ¶¶ 12, 18, 20, 21, 53.)  Further, the parties do not dispute that Wells

Fargo was Defendant's agent.  (*Id.*, Statement of Undisputed Material Facts ¶ 5; *admitted in*

*relevant part at* Def.'s Resp., Resp. to Statement of Undisputed Material Facts ¶ 5.)  Defendant

issued the Renewal Policy on December 19, 2001.  (*Id.*, Ex. 5 at 122–25 [Woolley Dep.]; Ex. 16

[Renewal Policy Excerpt].)  Defendant argues that Wells Fargo's knowledge is irrelevant because

"the agent had no underwriting authority or binding authority whatsoever."[3]  (Def.'s Resp. at

45.)  Defendant argues further that on November 13, 2001, its underwriter issued a renewal quote

with a disclaimer stating that Defendant needed copies of current MVRs on all of Plaintiff's

drivers to bind, thus proving its ignorance.[4]  (*Id.* at 36.)  I disagree on both counts.  Wells Fargo's

underwriting capability is irrelevant; the relevant issue is its knowledge.

Notice to an agent given in the course of a transaction which is within the scope of the

agency is construed as notice to the principal.  *Stortroen v. Beneficial Finance Co. of Colorado*,

736 P.2d 391, 396 (Colo. 1987); *see also Strong Bros. Enters., Inc. v. Estate of Strong*, 666 P.2d

1109, 1112 (Colo. Ct. App. 1983) ("[u]nder the law of agency, notice to an agent is constructive

notice to the principal"); 3 Couch on Insurance 3d § 46:21 (2005) ("[k]nowledge on the part of

---

[3]Defendant's argument is surprising, given its own argument against Plaintiff regarding
Montoya's authority that "acts performed or statements by an agent within the scope of real or
apparent authority are binding on the principal regardless of whether the principal has actual
knowledge of the agent's act."  (Def.'s Br. at 22.)

[4]In making this argument, Defendant appears to ignore its admission that it renewed the
Policy by binding on November 17, 2001.  (Def.'s Resp. at 34.)

insured's agent is imputed to the insured").  Consequently, because Wells Fargo's knowledge is imputed to its principal, and Wells Fargo obtained and reviewed Dodson's MVR and Plaintiff's driver list reflecting Dodson's name in October 2001, Defendant had knowledge of Dodson's employment with Plaintiff of the content of Dodson's MVR in October 2001.  As such, Defendant's review of the MVR in December 2001 cannot serve as discovery of a substantial change in its risk exposure supporting limitation of coverage.  More simply stated, Defendant's NDEE lacks consideration.

### c.    *Notice/Waiver*

It is undisputed that on April 12, 2002, Montoya approved and signed the NDEE.  (Pl.'s Br., Statement of Undisputed Material Facts ¶ 41; *admitted at* Def.'s Resp., Resp. to Statement of Undisputed Material Facts ¶ 41.)  Defendant argues that Montoya had actual or apparent authority to bind Plaintiff to the terms of the NDEE.  (Def.'s Resp. at 38–43.)  Plaintiff argues that Montoya's signature does not bind Plaintiff to the terms of the NDEE because: (1) Montoya had no intention to waive Plaintiff's existing right to coverage under the Renewal Policy; (2) Montoya did not have authority to bind Plaintiff; and (3) Defendant's NDEE remains void, even if signed or accepted.  (Pl.'s Br. at 24–28.)  Montoya's authority to bind Plaintiff to the NDEE is of no consequence, because Montoya's signature cannot defeat or cure the NDEE's statutory and contractual deficiencies.  *See Ruppel v. Life Investors Ins. Co. of Am.*, 969 P.2d 725, 729 (Colo. Ct. App. 1998) (holding insurer's policy provision not in compliance with statute unenforceable against insured).

As discussed in detail above, Defendant's NDEE is unenforceable because the NDEE: (1) did not comply with statutory notice requirements under Colorado Revised Statutes section 10–4–110.5; and (2) was unsupported by consideration.  Accordingly, Plaintiff is entitled to summary judgment on its claim for a declaratory judgment that Defendant's NDEE is void and unenforceable.  Neither party addresses the aspect of Plaintiff's claim requesting a declaratory judgment that Defendant must defend and indemnify Plaintiff.  Rather, both parties limit their arguments to the enforceability and validity of the NDEE.  (Pl.'s Br., *passim*; Def.'s Br., *passim*.)  In motions for summary judgment, the moving party bears the initial burden of showing an absence of evidence to support the nonmoving party's case.  *Celotex*, 477 U.S. at 325.  Accordingly, neither party is entitled to summary judgment on Plaintiff's claim for declaratory relief relating to Defendant's duty to defend and indemnify Plaintiff in the Frank lawsuit.

### d.      *Plaintiff's Claim for Breach of Contract*

Plaintiff moves for summary judgment on its second claim for breach of contract, but makes no allegations as to the elements of the claim.  (Pl.'s Br., *passim*.)  In fact, "Plaintiff seeks [s]ummary [j]udgment on the issue of breach.  Plaintiff submits that [Defendant's] denial of coverage, based upon a void and unenforcible [sic] [NDEE] constitutes a breach of the insurance contract" appears to be the entirety of Plaintiff's argument regarding its second claim.  (Pl.'s Br. at 28.)  Defendant does not fare better, noting "Plaintiff's arguments for breach of contract . . . are based upon the same legal theories as its request for [d]eclaratory [j]udgment.  Accordingly, [] Defendant prays that the [c]ourt enter judgment in its favor as to both [c]laims . . ." (Def.'s Br. at 24.)

-22-

In Colorado, a successful breach of contract claim requires: (1) existence of a contract; (2) performance by Plaintiff or some justification for nonperformance; (3) failure to perform by Defendant; and (4) damages. *Western Distrib. Co. v. Diodosio*, 841 P.2d 1053, 1058 (Colo. 1992). Here, neither party makes any mention whatsoever of the elements of breach beyond their conclusory allegations. (Pl.'s Br.; Def.'s Br.) While it is conceivably within the realm of possibility that this court could comb through the parties' submissions and piece together facts regarding some of these elements, this court is not tasked with doing so. Indeed, it is a fundamental principle of law that in motions for summary judgment, the moving party bears the initial burden of showing an absence of evidence to support the nonmoving party's case. *Celotex*, 477 U.S. at 325; *see also Anderson v. Dep't of Health & Human Servs.*, 907 F.2d 936, 947 (10th Cir.1990) (noting that moving party must submit enough evidence in support of its motion that it would be entitled to a directed verdict at trial if the evidence is not controverted). I decline the occasion to assume the parties' obligations under their respective burdens of proof in their motions. Because genuine issues of fact regarding the elements persist, neither Plaintiff nor Defendant is entitled to summary judgment on Plaintiff's claim for breach of contract.

### 3.   *Conclusions*

Based on the foregoing it is therefore ORDERED that:

1.     Defendant's motion for summary judgment (# 26) is DENIED.

2.     Plaintiff's motion for partial summary judgment (# 21) is GRANTED in part and DENIED in part. Plaintiff's motion is GRANTED as to its first claim for declaratory judgment, to the extent that claim seeks a declaration regarding the validity and enforceability of the NDEE.

Plaintiff's motion is DENIED as to its first claim for declaratory judgment, to the extent that claim seeks a declaration regarding Defendant's duties to defend and indemnify, and as to its second claim for breach of contract.

3.      Neither party is entitled to summary judgment with respect to Plaintiff's claims for declaratory judgment on Defendant's duty to defend and for breach of contract, and those claims remain pending.  At the conclusion of the case, after all claims are resolved, the clerk will enter Final Judgment declaring the NDEE invalid and unenforceable.

4.      The court will hold a Final Pretrial Conference commencing at 4:00 o'clock p.m. on Friday, April 28, 2006, in Courtroom A1001 of the Alfred A. Arraj United States Courthouse, 901 19th Street, Denver, Colorado.  In preparing for and participating in the conference, the parties and counsel will (1) follow the Instructions for Preparation and Submission of Final Pretrial Order, a copy of which can be downloaded from the court's web site, specifically http://www.cod.uscourts.gov/forms/ewn_fin_pre_ord_ins.pdf and (2) utilize the specific template located at http://www.cod.uscourts.gov/forms/ewn_fin_pre_ord.wpd  These specific web addresses should be used to insure that the proper format is observed.

Dated this 31st day of March, 2006.

BY THE COURT:


<u>s/ Edward W. Nottingham</u>
EDWARD W. NOTTINGHAM
United States District Judge